In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2964

CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREAS PENSION FUND, et al.,

*Plaintiffs-Appellees,*

*v.*

AUFFENBERG FORD, INC.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 1103—**Robert W. Gettleman**, *Judge.*

ARGUED OCTOBER 28, 2010—DECIDED MARCH 11, 2011

Before MANION, ROVNER, and SYKES, *Circuit Judges.*

MANION, *Circuit Judge.* Central States, Southeast and
Southwest Areas Pension Fund and its trustee, Howard
McDougall (collectively "the Fund"), filed suit against
Auffenberg Ford, Inc. under the Employee Retirement
Income Security Act ("ERISA"), 29 U.S.C. § 1001, in order
to collect unpaid contributions to the Fund. The district

court granted summary judgment in the Fund's favor, and Auffenberg now appeals. Because the terms of the collective bargaining agreement ("CBA") required Auffenberg to continue contributing to the Fund, notwithstanding any oral agreement to the contrary, we affirm.

## I.

Auffenberg is an Illinois car dealership employing workers represented by Local Union 50, a union affiliated with the International Brotherhood of Teamsters. The Fund is a multiemployer pension fund in which Auffenberg participated from 1980 to 1997, requiring Auffenberg to pay contributions on behalf of its unionized employees. Auffenberg withdrew from the Fund in 1997, resulting in a "withdrawal liability" of almost $50,000, which it paid in full.

In 2001, the President of Local 50, John Green, proposed that Auffenberg re-enter the Fund. Several longtime employees fell just short of the time needed to qualify for a higher benefit level, so Auffenberg was interested in extending its term with the Fund to accommodate them. Because Auffenberg was worried about the possibility of again incurring a "withdrawal liability," it asked to be eligible for the five-year "free look" exemption that would allow it to participate in the Fund and withdraw within five years without liability.[1] In June 2001, after

---

[1] Under 29 U.S.C. § 1390(a), "[a]n employer who withdraws from a plan in complete or partial withdrawal is not liable to

(continued...)

negotiations between Auffenberg and Local 50, a CBA was formalized. Apparently, during the negotiations, Auffenberg and John Green orally agreed that Auffenberg's obligation to contribute to the Fund would end when the CBA expired in five years. But this condition was not memorialized in the CBA; instead, the CBA contained an "evergreen clause" stating that all the terms and provisions of the CBA would remain in effect until a new CBA was negotiated or until negotiations were terminated.[2] In addition to the CBA, Auffenberg was a party to a Participation Agreement and a Trust Agreement that required Auffenberg to pay contributions to the Fund in accordance with the terms of the CBA.

In early 2006, Local 50 sought negotiations for a replacement CBA because the 2001 CBA was soon to expire. By this time, John Green of Local 50 had passed away. Although his replacement, Scott Alexander, was at first unaware of the alleged 2001 oral agreement, when in-

---

[1] (...continued)

the plan [for withdrawal liability] if the employer . . . had an obligation to contribute to the plan for no more than . . . the number of years required for vesting under the plan."

[2] The relevant language states:

> All of the terms and provisions of this contract shall be continued in full force and effect and extended from the termination date hereof to such time as the parties either enter into a new Agreement, or Agreement containing the desired modifications, or terminate further negotiation in the manner above mentioned.

formed of it, Alexander orally agreed that Auffenberg could cease contributing to the Fund as of April 30, 2006, the day the 2001 CBA expired. In May, Auffenberg's lawyer mailed a letter to the Fund, stating that its obligation to contribute to the Fund had ended with the expiration of the CBA. The Fund replied that the obligation to contribute had not ended. Negotiations for a new CBA continued during the summer and fall of 2006. A second letter, now signed by both Auffenberg's president and Local 50's representative, was mailed to the Fund in November 2006; the letter stated that Local 50 and Auffenberg had an understanding that Auffenberg's participation in the Fund ended on April 30, 2006, but that "a written agreement formalizing this understanding had not been finalized." A third letter to the same effect was sent to the Fund by Auffenberg's lawyer in December 2006.

A new CBA was eventually negotiated, and on February 10, 2007, the Fund received a copy of this agreement. The Fund accepted the new CBA as ending Auffenberg's duty to contribute under the old 2001 CBA, but it still claimed that Auffenberg was required to pay contributions for the nine-month period between the expiration of the 2001 CBA and the entry of the new CBA, an amount totaling $46,500, not including interest, fees, and costs. When Auffenberg refused to pay, the Fund filed suit.

The district court granted summary judgment in the Fund's favor, finding that Auffenberg's oral agreement reached with Green during the negotiations in 2001 was

barred by the parol evidence rule and unenforceable in view of ERISA's provisions. Auffenberg appeals.

## II.

We review de novo a district court's grant of summary judgment. *Winsley v. Cook Cnty.*, 563 F.3d 598, 602 (7th Cir. 2009). In its order granting summary judgment to the Fund, the district court ruled that the 2001 oral agreement was barred by the parol evidence rule. Auffenberg does not challenge this ruling on appeal. Instead, Auffenberg argues that the district court incorrectly focused on the original oral agreement made between Auffenberg and Local 50 in 2001. It also claims that the court neglected to consider the effect of the 2006 discussions between Auffenberg and Local 50's bargaining representative, Scott Alexander. In particular, Auffenberg contends that during the negotiations in 2006, it came to an oral agreement with Local 50 that it could cease contributions as of April 30, 2006. Since the Fund was properly informed of this oral agreement by letter, Auffenberg claims that the 2006 oral agreement is enforceable and absolved it from the duty of making contributions to the Fund. Auffenberg asserts that since the district court erred by not considering the effects of the 2006 agreement, this court should remand the case to the district court for a determination of this issue.

As a preliminary matter, the Fund argues that Auffenberg failed to raise this argument below and thus has waived the opportunity to bring it now on appeal. The parties presented sufficient evidence before

the district court about the events in 2006, including the existence of an oral agreement and the written notices to the Fund. Therefore Auffenberg has not waived its argument on appeal. The question then is whether an oral agreement between Auffenberg and Local 50 to end Auffenberg's contractual obligations to contribute to the Fund is enforceable as long as written notice is given. It is not.

Under ERISA, the terms of employee benefit plans must be "established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). Also, the Labor Management Relations Act ("LMRA") requires that "the detailed basis on which such payments are to be made is specified in a written agreement with the employer." 29 U.S.C. § 186(c)(5)(B). In this case, the written "evergreen clause" of the 2001 CBA required Auffenberg to continue making contributions to the Fund after the CBA expired and until such time as the parties either entered into a new agreement or terminated negotiations. No written agreement modifying the terms of the CBA was formalized and submitted to the Fund before February 10, 2007. Instead, Auffenberg contends that it had an oral agreement with Local 50 during its negotiations in 2006 following the expiration of the 2001 CBA, and that this oral agreement was sufficient to modify its obligations under the 2001 CBA.

The LMRA and ERISA "prevent[] a court from giving force to oral understandings between union and employer that contradict the writings." *Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d

1148, 1154 (7th Cir. 1989) (en banc) (citing 29 U.S.C. § 186(c)(5)(B) and 29 U.S.C. § 1145). Auffenberg attempts to distinguish this rule by arguing that an oral agreement modifying its obligations under the CBA is enforceable as long as written notice of the oral agreement is given, as was done here by notifying the Fund by letter. But not only does Auffenberg's contention conflict with our ruling in *Gerber Truck*, it conflicts with ERISA's requirement that "[e]very employee benefit plan shall be established and *maintained* pursuant to a written instrument." 29 U.S.C. § 1102(a)(1) (emphasis added).

Auffenberg cites *Central States, Southeast & Southwest Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454 (6th Cir. 1989), in support of the proposition that CBAs can be orally modified as long as written notice is given. But the *Behnke* case stands for the opposite proposition: in *Behnke*, the court found that an oral CBA was unenforceable because "the LMRA and ERISA require employer contributions to trust funds on behalf of employees to be pursuant to detailed *written* agreements specifying the employer's duty to contribute." *Id.* at 459 (emphasis in original). Auffenberg focuses on the binding "interim" CBA in *Behnke*, claiming that it was binding because it was communicated in writing to the pension fund, but this overlooks the fact that the interim CBA was a written, and not oral, agreement. *See id.* at 456-57.

In short, we find no support in either statutory or case law for the proposition that, as long as written notice is given, an oral agreement is capable of modifying a

written agreement requiring employee benefit contribu-
tions. Any oral agreement reached in 2006 contradicting
Auffenberg's written obligations to contribute to the
Fund is unenforceable. We AFFIRM.